IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANCE THORNTON, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Case No. 09-287E |
| ) | |
| UL ENTERPRISES, LLC, STNA, INC., ) | |
| and STEVE LARSON, ) | |
| ) | |
| **Defendants** ) | |
| ) | |

## OPINION

Pending before the Court is "Plaintiff's Motion Pursuant to Rule 12(b)(6) and 12(f) to STNA, Inc's Counterclaims" ("Motion to Dismiss") [Doc. #18]. Within this motion, Plaintiff Lance Thornton ("Thornton") moves for this Court to dismiss Count III of the counterclaims brought against him by Defendant STNA, Inc. ("STNA") and to strike STNA's request for attorney fees in Count III of the counterclaims. Count III of the counterclaims states a claim against Thornton for "Tortuous[1] Interference With Contract/Slander."

On January 13, 2010, STNA was ordered by this Court to file a response to Thornton's Motion to Dismiss by February 3, 2010. It did not do so. For the reasons set forth below, Plaintiff's Motion to Dismiss is granted as to Count III of the counterclaims brought against him by STNA, STNA's tortious interference with contract/slander counterclaim, and said claim is dismissed. Said dismissal, however, is without prejudice for STNA to replead its counterclaim against Thorton in an Amended Answer and Counterclaim within fourteen (14) days of the date

---

[1] While "tortuous" is a legitimate word, we suspect that in this case counsel intended the word to be "tortious."

of the Order accompanying this Opinion. Additionally, for the reasons set forth below, Plaintiff's motion to strike STNA's request for attorney fees in Count III of the counterclaims is denied as moot.

## I.   Standard of Review

A complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it does not allege sufficient facts to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007)). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965).

Under this standard, factual allegations of a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

## II.  Factual Allegations.

With respect to its counterclaim for tortious interference with contract/slander, STNA alleges in November 2009, after being separated from employment with STNA, Thornton contacted commercial area managers and other personnel associated with Valvoline, the principal customer of STNA, verbally and in writing. STNA Inc.'s Answer to First Amended Complaint and Counterclaims, ¶ 89. Thornton made and published false statements about STNA to these individuals and made and published other statements to these individuals that placed STNA in a

false light. Id. at ¶ 89. In November, 2009, after being separated from employment with STNA, Thornton also contacted independent product representatives associated with STNA, verbally and in writing. Id. at ¶ 90. To these individuals, Thornton made and published false statements about STNA and made and published other statements that placed STNA in a false light. Id. In November 2009, after being separated from employment with STNA, Thornton also contacted NASCAR, a previous licensor of STNA, verbally and in writing. Id. at ¶ 91. Thornton made and published false statements about STNA to NASCAR and made and published other statements to NASCAR that placed STNA in a false light. Id. The statements made by Thornton to the above listed company and individuals were not privileged, were published to third parties, were false and defamatory, and placed STNA in a false light. Id. at ¶¶ 92-95. As a direct result of Thornton making these statements about STNA, STNA has been damaged. Id. at ¶ 96. Thornton's acts in making these statements were willful and wanton and therefore, were done with reckless disregard for the reputation and property interests of STNA. Id. at ¶ 97. STNA seeks judgment in its favor on its tortious interference with contract/slander counterclaim in such amount as is proved at trial, plus attorneys fees and costs, exemplary damages and other relief as is just. Id. at "Wherefore clause."

### III. Legal Analysis.

#### A. Slander counterclaim.

In support of his motion to dismiss Count III of STNA's counterclaims, its slander/tortious interference counterclaim against Thornton, for failure to state a claim upon which relief can be granted, Thorton first contends that the slander part of STNA's counterclaim must be dismissed because it violates Fed.R.Civ.P. 8(a)(2): "[t]he minimum pleading standard

for slander requires that a party identify the slanderous statements made and who made them," and "STNA's complaint does not provide any detail as to Thornton's slanderous statements," and "[a]s a result, STNA has not provided Thornton with fair notice of the basis for its counterclaim for slander." "Plaintiff's Brief in Support of Motion to Dismiss Defendant STNA's Counterclaim" ("Plaintiff's Supporting Brief"), p. 5.

Initially, although STNA titles Count III of its counterclaims "Tortuous Interference with Contract/Slander," within the allegations underlying the claim, STNA alleged that Thornton made and published false statements verbally and in writing. See STNA's Answer to First Amended Complaint and Counterclaims, ¶¶ 89-91. Therefore, the Court has analyzed the counterclaim to be one for slander and libel, both of which are causes of action that fall under the umbrella of defamation, and will analyze the counterclaim as such.

"Federal courts sitting in diversity apply the substantive law of the states in which they sit." Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Since this Court sits in Pennsylvania, Larson's counterclaim against Thornton is governed by Pennsylvania law. 42 Pa.C.S.A. § 8343(a) states:

In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

>     (1) The defamatory character of the communication.
>     (2) Its publication by the defendant.
>     (3) Its application to the plaintiff.
>     (4) The understanding by the recipient of its defamatory meaning.
>     (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>     (6) Special harm resulting to the plaintiff from its publication.
>     (7) Abuse of a conditionally privileged occasion.

4

Id. As explained by the district court in Hudak v. Times Pub. Co. Inc., 534 F.Supp. 546 (W.D. Pa. 2008) (McLaughlin, J.):

> Initially, it is the Plaintiff's burden of establishing that the challenged statement is capable of defamatory meaning. To prove defamation, the plaintiff must show that the challenged statement "tends so to harm [his reputation] as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." Blackwell v. Eskin, 916 A.2d 1123, 1125 (Pa.Super. 2007) (quoting Tucker v. Philadelphia Daily News, 577 Pa. 598, 848 A.2d 113, 124 (2004)). A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession. Maier v. Maretti, 448 Pa.Super. 276, 671 A.2d 701, 704 (1995), appeal denied, 548 Pa. 637, 694 A.2d 622 (1996). Whether the challenged statements are capable of defamatory meaning is a question of law to be decided by the court. Id. (citing Tucker, supra, at 123).
>
> "In determining whether a communication is defamatory, the court must view the statement 'in context' with an eye toward 'the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir.2001) (quoting Baker v. Lafayette College, 516 Pa. 291, 532 A.2d 399, 402 (1987)) (alteration in the original). Publications which serve merely to annoy or embarrass the subject are not sufficient to establish a claim for defamation. Blackwell, 916 A.2d at 1125 (quoting Tucker, supra ); Maier, 671 A.2d at 704.

Id. at 558-559. Additionally, while federal pleading standards do not require any heightened pleading standard for STNA's slander/libel counterclaim, the counterclaim must be sufficient to give fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957).

Applying the above-stated law to the allegations contained in Count III of STNA's counterclaim, STNA does not sufficiently plead the defamatory character of the communications allegedly made and published by Thorton to commercial area managers and other personnel associated with Valvoline, independent product representatives associated with STNA, and

5

NASCAR. See STNA Inc.'s Answer to First Amended Complaint and Counterclaims, ¶¶ 89-91. Rather, STNA alleges only that the statements made and published about STNA to these enumerated individual and entities were false and placed Defendant in a false light, and that is not enough. Id. Accordingly, Thorton's motion to dismiss Count III of STNA's counterclaims to the extent it alleges a claim for slander and/or libel is granted for failure to state a claim upon which relief can be granted and this part of Count III of STNA's counterclaims is dismissed. Said dismissal, however, will be without prejudice for STNA to replead a defamation counterclaim against Thorton in an Amended Answer and Counterclaim within fourteen (14) days of the date of the Order accompanying this Opinion.

Thornton also contends that the slander claim contained in Count III of STNA counterclaims must be dismissed for failure to state a claim upon which relief can be granted because STNA's counterclaim violated Fed.R.Civ.P. 9(g) in that STNA failed to specifically plead that it suffered any special harm, a necessary element for a claim of defamation under Pennsylvania law. Plaintiff's Supporting Brief, pp. 6-7. "In the present case, STNA has failed to plead special harm. Its counterclaim is devoid of allegations respecting any pecuniary loss suffered by STNA because of Thornton's alleged slanderous activity. Instead STNA generally pleads that 'as a direct result of Thornton's actions and statements, [STNA] was damaged'." Such general allegations of damages do not comply with FED. R. Civ. P. 9(g)." Id. at p. 7. (citation omitted).

Given our decision to grant Thornton's motion to dismiss the slander/libel claim contained in Count III of STNA's counterclaims for failure to sufficiently plead the defamatory character of the communications allegedly made by Thornton to the enumerated third parties

6

about STNA, there is no need to substantively address this argument and we elect not to do so. See generally Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 248, 809 A.2d 243, 247 (2002) (explaining that under Pennsylvania law, "a plaintiff alleging slander must also prove special damages unless the statement is slander 'per se'."); Manno v. American General Finance Co., 439 F.Supp.2d 418, 434 (E.D. Pa. 2006) (explaining "While a plaintiff alleging slander must ordinarily show 'special harm,' 'a plaintiff in libel ... need not prove special damages or harm in order to recover; he may recover for any injury done his reputation and for any other injury of which the libel is the legal cause'.") (citations and footnotes omitted.).

### B. Tortious Interference with Contract Counterclaim.

Thornton also moves to dismiss the tortious interference with contract claim contained in Count III of STNA's counterclaims against him on the basis that "STNA does not allege any facts which demonstrate the first element of the tort - existence of a contractual relationship between STNA and a third party." Plaintiff's Supporting Brief, p. 9.

In Pennsylvania, the elements of a tortious interference with contract claim are: "(1) the existence of a contractual relationship between the plaintiff and a third party; (2) purposeful action on the part of the defendant intended to harm the relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damages resulting from the defendant's conduct." Stoeckinger v. Presidential Financial Corp. of Delaware County, 948 A.2d 828, 834 (Pa. Super. 2008) (citing Hillis Adjustment Agency, Inc. v. Graham Co., 911 A.2d 1008, 1012 (Pa.Super.2006)).

Reviewing the allegations contained in STNA's Answer and Counterclaim, STNA does not allege the existence of a contractual relationship between STNA and any third parties. Nor

7

does STNA allege purposeful action on the part of Thornton with the intent to harm that relationship. Accordingly, STNA has failed to state a tortious interference with contract claim against Thornton upon which relief can be granted and said claim must be dismissed. Said dismissal, however, will be without prejudice for STNA to replead a tortious interference with contract claim against Thorton in an Amended Answer and Counterclaim within fourteen (14) days of the date of the Order accompanying this Opinion.

### C. Motion to Strike Attorney Fees Pursuant to Fed.R.Civ.P. 12(f).

Thornton also contends that if this Court upholds any part of Count III of STNA's counterclaims against him or permits STNA to amend this counterclaim, it should prohibit STNA from requesting attorneys fees. Plaintiff's Supporting Brief, p. 10. More specifically, Thorton argues that: (1) "Pennsylvania follows the American rule of damages, which provides that a successful litigant cannot recover its attorney fees against a non-successful litigant in the absence of a private agreement or a contrary statutory provision;" (2) there are no allegations of a private agreement between Thornton and STNA that entitles it to collect attorney fees against Thornton, or any citation to a Pennsylvania statute that would allow STNA to recover attorney fees in this case; and (3) therefore, "STNA cannot recover attorney fees as a remedy for either slander or tortious interference with a contract and such a request should be stricken pursuant to FED. R. CIV. P. 12(f)." Plaintiff's Supporting Brief, p. 10.

Given our decision to grant Thornton's motion to dismiss Count III of STNA's counterclaims against him, Thornton's motion to strike STNA's request for attorney fees is denied as moot. See generally Trizechahn Gateway LLC v. Titus, 976 A.2d 474, 482-83 (Pa. 2009) (explaining "[u]nder the American Rule, applicable in Pennsylvania, a litigant cannot

recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.").

## IV. Conclusion.

Plaintiff's Motion to Dismiss is granted as to Count III of the counterclaims brought against him by STNA, STNA's tortious interference with contract/slander counterclaim, and said claim is dismissed. Said dismissal, however, is without prejudice for STNA to replead its counterclaim against Thorton in an Amended Answer and Counterclaim within fourteen (14) days of the date of the Order accompanying this Opinion. Plaintiff's motion to strike STNA's request for attorney fees in Count III of the counterclaims is denied as moot given the Court's ruling that Count III of STNA's counterclaim is dismissed. An appropriate Order will follow.

February 4, 2010

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge